***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. Employee is Crystal McWhirter.
2. Employer is Phillips Staffing, Inc., a temporary agency that placed the plaintiff at Pass Seymour.
3. The carrier on the risk for Phillips Staffing, Inc., was The PMA Insurance Group.
4. An employee-employer relationship exists between Phillips Staffing, Inc., and plaintiff.
5. The average weekly wage was $264.32, yielding a compensation rate of $176.22 per week.
6. Plaintiff alleges that the date of injury by accident was October 16, 2001.
7. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
8. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner.
(a) Stipulated Exhibit 1 — Pre-trial agreement
(b) Stipulated Exhibit 2 — medical records
(c) Stipulated Exhibit 3 — I.C. Forms
(d) Stipulated Exhibit 4 — incident report
(e) Stipulated Exhibit 5 — statement of Ralph Smith
9. The issues before the Commission are whether plaintiff's injury at work entitles her to compensation under the Workers' Compensation Act, and, if so, to what benefits is plaintiff entitled.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty years old and had completed the tenth grade of high school. Plaintiff has worked in various mills including Pharr Yarns, China Grove, JPS, Threads, and Pass Seymour and has also done some waitressing.
2. Plaintiff was hired at Pass Seymour through the temporary agency, Phillips Staffing, defendant-employer.
3. On June 11, 2001 plaintiff was hired to work at Pass Seymour to pack wall plates. Packing wall plates required plaintiff to sit and stand while she inspected electrical wall plates. Plaintiff packed 20 plates per box and then packed seven of these small boxes into a larger box, taped the boxes shut and stacked them on a pallet. The heaviest item plaintiff was required to lift weighed approximately 30 pounds.
4. Plaintiff's prior medical history was unremarkable except for injuries plaintiff sustained in an automobile accident on November 9, 1998, when she suffered a collapsed lung, broken ribs and fractured skull after she struck the windshield of the vehicle.
5. Approximately one week before October 8, 2001, plaintiff began to experience some pain associated with her right groin area. Plaintiff testified that she had pulled her right groin muscle while attempting to put on a tight pair of blue jeans or by moving boxes either at home or at work. Plaintiff never reported any incident to her employer, as plaintiff did not think that she had hurt her groin at work. Plaintiff continued to work until October 8, 2001 when she went to see her family physician, Dr. Charles Lowery.
6. On October 8, 2001, plaintiff presented to Dr. Lowery with complaints of pain in her right groin area. Based upon his examination, Dr. Lowery noted tenderness and pain associated with movement of plaintiff's right leg. Dr. Lowery recommended that plaintiff apply heat, continue taking Paxil, and wrote plaintiff out of work for one week.
7. After plaintiff had been out of work for one week, as authorized by Dr. Lowery, plaintiff was allowed to return to work. Plaintiff returned to work on October 15, 2001 to start her shift at 11:00 p.m. Plaintiff had previously requested permission from Pass Seymour to be able to return to work using crutches, and was given approval to do so. It was understood that plaintiff was going to be able to perform her work by sitting down.
8. On October 15, 2001 plaintiff drove herself to work and walked into the plant on her crutches. Plaintiff's supervisor, Kevin Garrison, testified that he saw plaintiff in the parking lot on crutches and that he allowed her to go to work using her crutches. Plaintiff worked two hours until approximately1:00 a.m., when she went on her first break. Plaintiff walked toward the exit, which led to the smoking area. Ralph Smith, who was a co-worker, was walking with plaintiff. Plaintiff was using crutches as she walked toward the exit. Once they got near the exit door, Mr. Smith stepped in front of plaintiff to open the door. At that time plaintiff's left crutch slipped out from under her and plaintiff fell straight to her knees and then rolled forward. At the time plaintiff's knees hit the ground, she felt and heard a pop in her right hip and immediately felt pain. Mr. Smith turned around in time to see plaintiff's crutch sliding out and see plaintiff rolling forward. Mr. Smith helped plaintiff into the smoking area.
9. In the smoking area plaintiff attempted to smoke a cigarette, continued to experience pain, and noted to Mr. Smith that something was just not right. It was then that plaintiff was placed upon a rolling cart by Mr. Smith and another co-worker and rolled to Mr. Garrison's office. There, plaintiff met with Mr. Garrison and Roger Lynn McWhirter, plaintiff's co-worker and father-in-law. Both Mr. Garrison and Mr. McWhirter observed that plaintiff definitely appeared to be in pain. Even though plaintiff was offered medical care, she chose to go home instead. Mr. McWhirter brought her car around and then helped pick her up to place her in the car. As plaintiff was being placed into her car by Mr. McWhirter, she yelled out in pain as she was being moved.
10. Following her injury, plaintiff continued to experience severe pain. Due to her continued severe pain, plaintiff was taken to the emergency room at Gaston Memorial Hospital.
11. Plaintiff was examined at the emergency room by Dr. Timothy J. Carr on October 17, 2001 at 9:17a.m., and presented with complaints of severe right hip pain. Dr. Carr diagnosed plaintiff with right femoral neck fracture. Dr. Carr noted that the history he was given on plaintiff's injury was that she was at work on crutches, and that her crutches slid out, hyper-extending her hip and causing immediate pain in her right hip.
12. Emergency room x-rays were taken of plaintiff's right hip on October 17, 2001, and these x-rays showed that plaintiff had a displaced femoral neck fracture.
13. Following the results of her x-rays, plaintiff was next examined by Dr. Richard C. Avioli, an orthopedic surgeon, at the emergency room. In his preoperative admission history and physical examination report, Dr. Avioli noted that plaintiff had returned to work on crutches when she slipped and fell, hyperextending her right hip. Plaintiff reported feeling immediate pain and a pop in her hip, and since her fall at work, she has had extreme pain in the right hip. On October 17, 2001, Dr. Avioli performed surgery on plaintiff to correct her displaced right femoral neck fracture. Plaintiff was discharged on October 19, 2001.
14. Dr. Avioli felt plaintiff's fall at work on October 16, 2001, when her crutch slipped our from under her, caused plaintiff's displaced right hip fracture. In Dr. Avioli's opinion, lifting boxes approximately one month prior to her October 16, 2001 fall and injury at work could not have caused plaintiff's displaced right hip fracture. Dr. Avioli felt it was more likely that plaintiff's injury was caused by trauma.
15. The Full Commission finds that plaintiff's testimony describing her October 16, 2001 fall, the medical history taken on October 17, 2001 describing plaintiff's fall at work, along with her October 23, 2001 work incident report, when taken as a whole, are consistent and support a finding that plaintiff sustained a slip and fall at work.
16. Plaintiff's slip and fall occurred when plaintiff was engaged in the performance of her work duties on defendant's premises and was attempting to undertake a work-related smoke break, an authorized activity. Plaintiff's slip and fall caused her resulting injuries. The fact that plaintiff was ambulating to this smoke break area by use of crutches, which she was given permission to use at work, does not remove the causal connection between plaintiff's slip and fall and her employment.
17. The Full Commission finds that plaintiff has shown by the greater weight of the evidence that she sustained an injury by accident arising out of and in the course of her employment on October 16, 2001, when she slipped and fell.
18. Plaintiff has not returned to work with defendants or with any other employer since October 16, 2001. Plaintiff has also not looked for any work since October 16, 2001. Plaintiff testified that she has not looked for work because she is unable to work due to the work-related right hip injury and her continued pain. Plaintiff stated that she continued to have pain in her hip, difficulty with movement, and pain when sitting or walking.
19. Plaintiff was last seen by Dr. Avioli on February 11, 2002. At that time, Dr. Avioli continued plaintiff on restrictions of using crutches to walk and touch-down weight bearing on her right leg. Dr. Avioli also continued plaintiff out of work until her follow-up visit with him in three months on or about May 13, 2002. However, Dr. Avioli did not see plaintiff again after February 11, 2002 and he testified that he would have to examine plaintiff again in order to give her any current restrictions. Dr. Avioli stated that it was not unreasonable to expect plaintiff to continue having problems with her hip, because she was at risk for avascular necrosis of the hip and/or non-union of the fracture due to the fact that the displaced femoral neck fracture was 48 hours old by the time he saw her in the emergency room.
20. Plaintiff testified that she did not return to Dr. Avioli or receive further medical treatment because she had no health insurance and her claim had been denied by defendants.
21. At the Deputy Commissioner hearing plaintiff did not present any further medical evidence that she was taken out of work or given work restrictions by any doctor since she last saw Dr. Avioli on February 11, 2002. The greater weight of the medical evidence shows that as a result of her compensable injury to her right hip, plaintiff was disabled from any employment from October 16, 2001 until May 13, 2002. The evidence of record does not support any continuing disability after May 13, 2002.
22. There has been no determination that plaintiff has reached maximum medical improvement from the injuries she sustained from her compensable injury by accident on October 16, 2001.
23. Plaintiff has yet to be evaluated for any permanent functional impairment to her leg resulting from her October 16, 2001 compensable injury by accident.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment on October 16, 2001, resulting in a right hip fracture and necessary surgery on October 17, 2001. N.C. Gen. Stat. §97-2(6).
2. As a direct and proximate result of plaintiff's October 16, 2001 injury by accident and her resulting medical conditions, she was disabled from any employment from October 16, 2001 until May 13, 2002 and is entitled to temporary total disability compensation at the rate of $176.22 from October 16, 2001 until May 13, 2002. N.C. Gen. Stat. § 97-29. Further medical evidence is necessary to determine the extent, if any, of plaintiff's disability after May 13, 2002.
3. Plaintiff is entitled to have defendants provide all medical treatment necessitated by her October 16, 2001 injury by accident to her right hip, including her October 17, 2001 surgery and further medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $176.22 per week from October 16, 2001 until May 13, 2002. This amount is due and payable and shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury by accident for so long as may be reasonably required to effect a cure and give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph #1 of this award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including costs due for the testimony of expert witnesses.
 *********** ORDER
Plaintiff filed a motion with the Full Commission to reopen the record to receive additional medical evidence consisting of the medical records of Charlotte Orthopaedic Specialists and Dr. Thomas Fehring, who treated plaintiff beginning in February 2004 following the close of the evidence of record before the Deputy Commissioner. The Full Commission grants plaintiff's motion to admit newly-discovered evidence pursuant to N.C. Gen. Stat. § 97-85 and Rule 701(6) of the N.C. Workers' Compensation Rules.
IT IS HEREBY ORDERED that the medical records of Charlotte Orthopaedic Specialists and Dr. Fehring are received into evidence and made a part of the record in this case.
IT IS FURTHER ORDERED that the parties shall have 60 days from the date of this Order within which to take the deposition of Dr. Thomas Fehring. Upon receipt of the transcript of Dr. Fehring's deposition, the Commission will render a final decision concerning the extent of plaintiff's disability, if any, after May 13, 2002.
This the 16th day of December 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb